GILMORE *v.* STATE OF INDIANA.

[No. 28,649. Filed May 16, 1951.]

*Wilbur F. Dassel*, of Evansville, for appellant.

*J. Emmett McManamon*, Attorney General; *Charles F. O'Connor* and *Merl M. Wall*, Deputy Attorneys General, for appellee.

EMMERT, J.—The appellant was indicted for the offense of voluntary manslaughter, of which he was found guilty by a jury. From the judgment on the verdict he prosecutes this appeal.

Before entering a plea of not guilty, the appellant filed a verified plea in abatement, which in substance alleged that after the grand jury had been impaneled, one member thereof stated that, "he was opposed to the infliction of capital punishment and that he did not feel qualified to serve upon the Grand Jury where such a case might come before him, and further stated that he would not, if he served upon the Grand Jury, bring an indictment even if a first degree murder case were brought before such jury." Thereupon the trial court excused said grand juror from further service. The appellant does not complain that the statutes on drawing another grand juror from the jury box to replace the one excused were not followed. Appellant alleged that during such time he was not in custody or on bail to answer any offense or crime, and he had no knowledge that the grand jury intended to investigate any offense claimed to be committed by him, and that he was not present in person or by attorney at the time the grand jury was impaneled or the grand juror excused. The state filed a demurrer to this plea in abatement, which was sustained, which ruling is here assigned as error.

It does not appear that before the impaneling of the grand jury the members were sworn to answer questions concerning their competency. This practice was recognized as proper in *Jones* v. *State* (1831), 2 Blackf. 475. In that case the attorney prosecuting the pleas of the state asked one juror " *'if he could in his conscience find any man guilty of an offense which would subject him to the punishment of death?'* " And the juror answered " *'he thought he could not in his conscience find any man guilty of an offense which would subject him to death.'* " The trial court excused the grand juror for cause. This court, in deciding this was not error, said, "The object, in these cases, is not to procure a jury that will acquit the guilty or convict the innocent, but to select such men as will impartially hear and examine, and acquit the innocent and convict the guilty. A grand jury is the great inquest between the government and the citizen; an institution that should be preserved in its purity; and no person should ever be permitted to take a seat as a member thereof, except such good and lawful men as will impartially and faithfully carry the true objects of the institution into effect. We think the Court did not err."

In *State ex rel. Reichert* v. *Youngblood* (1947), 225 Ind. 129, 73 N. E. 2d 174, we held it was proper for an *amicus curiae* to bring to the attention of the court misconduct on the part of one or more grand jurors after the grand jury had been impaneled. The state is entitled to a grand jury which will have no conscientious scruples against discharging its statutory duty. In the opinion this court said:

"The grand jury system came to this country as a part of the common law. 38 C. J. S. 982. In this state its selection, impaneling, swearing, in-

struction, rights, powers and duties are largely governed by statute. However, when cases not governed by the statute arise, resort may be had to the common law principles as declared by the courts of this state, as well as other states, for guidance. *Williams* v. *State* (1919), 188 Ind. 283, 123 N. E. 209." (P. 137.)

"The rule is well settled that for any good cause shown the court may, without challenge from either party, excuse a juror, of its own motion, before he is sworn, and if an impartial jury is thereafter obtained the defendant cannot complain." *United States* v. *Jones* (1895), 69 Fed. 973, 975, 976. If, after the grand jury is impaneled it should develop that any member is conscientiously opposed to doing his duty, the court on its own motion should and does have the right to remove him for cause, and to complete the grand jury by properly adding another member in place of the one so excused. See 38 C. J. S. 1021, § 31. The demurrer to the plea in abatement was properly sustained.

By a special bill of exceptions in the record it appears that the petit jury brought its verdict into open court, and by its foreman stated that it had reached its verdict. The verdict was then delivered to the court bailiff in charge of the jury, and by him delivered to the deputy clerk, who upon instructions of the court read the verdict, which stated that the jury found the defendant not guilty. Thereupon the foreman stated, "What was that, what was that you just read? We found the defendant guilty." After the verdict was again read the foreman stated that this was the wrong verdict and that "We found the defendant guilty." The trial judge said to the jury, "Was the first verdict rendered a few minutes ago signed by inadvertence or by mistake?" And the foreman answered, "By mistake,

yes sir." The judge then asked, "Is that correct, gentlemen of the jury?" to which each juror said, "That is right, yes." After the jury had returned to the jury room to correct its verdict it returned into open court a verdict of guilty, and upon being polled by the court, the jury stated that it was its verdict, which the court then accepted and ordered spread of record in the record of the Vanderburgh Circuit Court. This verdict found the defendant guilty of voluntary manslaughter, as charged in the indictment, and that his true age was 39 years. It was then endorsed by the official file mark of the Vanderburgh Circuit Court.

The appellant's contention is that the first verdict was the only one the jury could return, and upon it he was entitled to a judgment of acquittal. This presents the question as to when the verdict in a criminal case becomes final.

Section 9-1811, Burns' 1942 Replacement, provides for the return of the verdict in open court and gives the defendant the right to have the jury polled. The practice in this state has been for the trial judge to ask the jury if it has agreed upon its verdict. If the foreman of the jury answers in the affirmative, the verdict is ordered delivered to the bailiff, who in turn delivers it to the clerk, if present, or to the judge, and then the verdict is read. The judge then asks the jury if this is its unanimous verdict. If this is answered in the affirmative the defendant has the right to poll the jury. If it still appears to be the unanimous verdict of the jury, it is received and filed and the jury discharged.[1]

---

[1] "Until the announcement that the verdict is recorded,—or some such period, as to which the cases are not distinct or uniform,—the jury may change it at pleasure, or one may defeat it by dissent; but after they have dispersed, they cannot be recalled to alter or amend it, nor can a juror object that he did

In *West* v. *State* (1950), 228 Ind. 431, 438, 92 N. E. 2d 852, 855, this court recognized the general rule that if a verdict is defective in substance, it is the duty of the trial judge to have it amended by the jury before it is allowed to separate. The court, speaking by Gilkison, J., said: "There must be a time when the members of a jury cease to act as a jury in a case. That time arrives when the jury returns a verdict in open court which is accepted by the judge, and the jury is then officially discharged by the judge." In this appeal the first verdict was never accepted or ordered filed of record by the judge, nor was the jury discharged. Appellant's objections were properly overruled and the verdict finding the defendant guilty as charged was valid.

The appellant challenges the sufficiency of the evidence to sustain the verdict. Although on appeal we will examine the evidence to see if it sustains the verdict, we cannot weigh the evidence, and after a conviction only the evidence most favorable to the state, and all reasonable and logical inferences that may be drawn therefrom, will be considered in determining whether the jury was warranted in returning a verdict of guilty. *Badgley* v. *State; Brown* v. *State* (1948), 226 Ind. 665, 82 N. E. 2d 841; *Kallas* v. *State* (1949), 227 Ind. 103, 83 N. E. 2d 769.

There is evidence in the record from which the jury could properly find that the offense occurred as follows: The evening of May 21, 1949, Frank Brooks, nicknamed Shorty, the decedent, was sitting on a stool in a restaurant near Fifth and Walnut Streets in Evansville, Indiana. The decedent was talking to the witness James G. Harley when appellant

---

not consent thereto. . . ." 2 Bishop's New Criminal Procedure (2d Ed.), § 1003, Clause 2, p. 864.

walked in. Appellant had a cane, and with it he punched the decedent in the side and said, "I want to see you outside." Both of them went outside where an argument occurred. Appellant still had the cane in his hand and pointed it at the decedent, and said to the decedent, "Let's go, go ahead. Let's go, go ahead." Appellant had a pistol in his left hip pocket. Decedent was a short distance in front of appellant walking away from him when he stopped and turned around. Appellant with his left hand drew the pistol and fired three shots, one of which hit the witness Jobie Shelton, who was walking along the sidewalk, in the shoe, and another shot hit the decedent in the sternum near the mid-line, ranged downward through the liver and through the stomach and finally lodged between the seventh and eighth lumbar vertebra near the outside skin. After the shots were fired the decedent ran into the appellant and both men fell to the sidewalk. Appellant walked away from the scene, went to police headquarters where he surrendered himself, saying he had shot a man. Decedent was put in an ambulance, but died before arrival at the hospital. Decedent had a pocket knife in one hip pocket and part of a bottle of wine in another pocket. No weapons were found at the scene of the shooting. The appellant did not take the stand as a witness in his own behalf, nor did he introduce any evidence. The jury had the right to find the appellant was the aggressor and the shooting was not done in self defense. The evidence was sufficient to sustain the verdict and was not contrary to law.

Appellant asserts there was error in refusal of the court to give his requested instructions numbered 1, 2, 4, 7, 11, 12, 14 and 16. The state's answer brief asserts these alleged errors have been waived for the reason appellant made no specific objections to the refusal of the court to give these

instructions. Rule 1-7 does not require the party requesting any instruction which has been refused to make a specific objection to the ruling of the court. The instruction speaks for itself, and if under the law and facts involved it should have been given, the record at this stage preserves the error. "The action of the court in refusing a properly tendered instruction automatically furnishes the party tendering it with an exception to that ruling, without the making or entry of any objection thereto." *Dulin* v. *Long* (1944), 115 Ind. App. 94, 100, 101, 54 N. E. 2d 652. However, when an appellant wishes to present such error in his original brief, he should point out to this court with certainty wherein the error of the court was committed. Appellant's original brief should not only present the issues to be decided upon appeal, but it should be of material assistance to the court in deciding those issues. It is insufficient to merely state that a requested instruction, which has been denied, correctly states the law and that certain other instructions were insufficient to cover the points contained in the refused instruction. This court is entitled to have presented to it in more than a summary fashion the reasons why the action of the trial court has prejudiced the appellant.

However, we have carefully examined all the instructions given to the jury, which were twenty-three in number, and included sixteen given by the court on its own motion and seven requested by appellant. These instructions correctly informed the jury as to the law on all the issues and facts to be decided by it, and it is our opinion that the subject matter of each of appellant's requested instructions which was refused, was adequately covered by other instructions given to the jury.

Judgment affirmed.

NOTE.—Reported in 98 N. E. 2d 677.